IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE L. DAVIS, | No. 2:11-cv-2296-GEB-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION |
| HIGH DESERT STATE PRISON, et al., | |
| Defendants. / | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are two unopposed[1] motions to dismiss (Docs. 39, 40).

**I.    BACKGROUND**

This action proceeds on plaintiff's complaint (Doc. 1) against defendants Clark, Abdur-Rahman, Pomazal, Amero, Qualls, Burgett, and Vitvitski. Plaintiff alleges that the defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights, and denied him his due process rights relating to a discipline hearing.

---

[1] Plaintiff filed a belated motion for additional time to respond to the motions to dismiss which was denied.

1

Specifically he claims defendant Qualls denied him due process by using false evidence against him in this discipline hearing.  He further claims defendants Clark, Abdur-Rahman, Pomazal, Burgett, Amero, and Vitvitski denied him adequate medical care by taking away his wheelchair and refusing to return it, refusing a referral to a pain specialist and MRI, and discontinuing his pain medication.

## II.    MOTION TO DISMISS

Defendants filed the pending motions to dismiss on the basis that plaintiff failed to exhaust his administrative remedies prior to filing this action as to some of his claims, that plaintiff's complaint fails to state a claim as to others, and that the defendants are entitled to qualified immunity.

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

2

raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

Here, defendants argue plaintiff failed to exhaust his administrative remedies as to three of his claims, and fails to state a claim as to the remainder.

### A. FAILURE TO EXHAUST

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory

3

regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

4

The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See id. Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive appeals, use of improper language, failure to attach supporting documents, and failure to follow proper procedures. See Cal. Code Regs. tit. 15, §§ 3084.6(b). If an appeal is rejected, the inmate is to be provided clear instructions how to cure the defects therein. See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a). Group appeals are permitted on the proper form with each inmate clearly identified, and signed by each member of the group. See Cal. Code Regs. tit 15, § 3084.2(h).

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Defendants argue plaintiff failed to exhaust his claims regarding his wheelchair, pain specialist and MRI. As to plaintiff's claim regarding his wheelchair, plaintiff did file an

inmate grievance requesting to have his wheelchair returned to him.  Plaintiff attached a copy of the second level response to his complaint, appeal log # HDSP-D-11-01028.  His grievance was partially granted at the second level on August 10, 20111, but it was determined that the wheelchair was not medically indicated.  (See Compl, Doc. 1 at 92-93).  Plaintiff was informed that if he was dissatisfied with the decision he could appeal to the Director's Level Review.  According to the defendant's declarations, attached to the motions to dismiss, plaintiff never followed through with this grievance by filing for a Director's Level Review.  As plaintiff failed to exhaust all available administrative remedies by following through all levels of the inmate grievance process, this claim should be dismissed.

Similarly, as to plaintiff's claims that he was inappropriately denied a referral to a pain specialist and MRI, plaintiff also failed to exhaust his administrative remedies prior to filing this action.  Plaintiff  submitted an inmate grievance requesting a pain specialist and an MRI, log #HDSP-11-00521.  According to the exhibits attached to the declarations of defendant's motion to dismiss, the grievance was accepted through the third and final level of review, but was not fully adjudicated until November 29, 2011.  Plaintiff filed this action on August 29, 2011.  Therefore, he did not fully exhaust his administrative remedies until three months after this case was filed.  As all administrative remedies are required to be exhausted prior to filing an action, these claims should also be dismissed.

### B.  FAILURE TO STATE A CLAIM

Next, defendants argue plaintiff fails to state a claim for deliberate indifference to his medical needs by discontinuing his pain medication.  Plaintiff claims defendants Pomazal, Abdur-Rahman, Clark and Burgett all participated in denying him necessary pain medication.  Specifically, he claims defendant Clark refused to give him his medication in the pill line; defendant Burgett refused to renew his prescription for morphine with no justification; defendant Abdur-Rahman only provided bare minimal care for plaintiff, and allowed defendants Clark and Burgett to take away his pain medication despite the pain management agreement plaintiff had

signed; and defendant Pomazal first under-prescribed the amount of pain medication plaintiff needed, then refused to provide plaintiff any pain medication until plaintiff went on a hunger strike, then only allowed a fifteen day prescription and refused him any more thereafter.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants argue the facts alleged in the complaint, when read in conjunction with the inmate grievances plaintiff attached to the complaint, fail to allege a claim for deliberate indifference to plaintiff's medical needs. The defendants argue that they evaluated plaintiff and made a medical determination as to what plaintiff needed for treatment. There was no failure to treat. In addition, they argue the complaint is devoid of any allegation that defendants Pomazal and Abdur-Rahman took any action to deprive plaintiff of medication treatment. Bur rather, they responded to plaintiff's complaints of pain.

Plaintiff's claims toward defendant Clark is explained a bit fuller in plaintiff's inmate grievance. Apparently at one point, plaintiff was late for pill line and arrived without his

identification. Under those circumstances, defendant Clark refused to give plaintiff his medication. Defendant Clark argues in the motion to dismiss that once plaintiff had his identification, he was provided his medication. However, the claims in the complaint and exhibits, read broadly as the court must, indicate that defendant Clark has denied plaintiff his medication on several occasions, and has done so arbitrarily. The undersigned agrees that if there was only one such occasion, and the situation was easily remedied by presenting the proper identification, plaintiff's claim would probably be insufficient. However, it appears that plaintiff is claiming this is an on-going situation, where defendant Clark arbitrarily denies him his medication. As such, it is possible that if the allegations are proven, plaintiff has a reasonable opportunity to prevail on the merits of this claim. Accordingly, the undersigned finds plaintiff's complaint does state a claim against defendant Clark for refusing to provide plaintiff with his pain medication.

As to his claims against defendants Burgett, Abdur-Rahman, and Pomazal, reading the complaint and exhibits attached together, broadly as the court must, plaintiff alleges the following. He and defendant Abdur-Rahman signed a pain management agreement in December 2010, wherein Dr. Abdur-Rahman increased the amount of Morphine plaintiff was receiving from 15 mg to 45 mg. Then in January 2011, defendant Burgett arbitrarily canceled his prescription, without providing any alternative pain medication. Defendant Abdur-Rahman refused to reorder plaintiff's pain medication or otherwise deal with his medical problems. Plaintiff then went on a hunger strike in protest of his lack of pain medication, after which defendant Pomazal provided him a fifteen-day prescription of Morphine, in March 2011, but refused to provided any refills or alternative pain medication thereafter.

Defendants argue they evaluated and made a medical determination regarding plaintiff's pain medication. They further argue that the complaint is devoid of any allegation that they took any action to deprive plaintiff of medical treatment, but rather responded to his complaints of pain. In support of their argument, the defendants point to Exhibit I attached to

1  plaintiff's complaint. Exhibit I is the 602 inmate grievance plaintiff filed regarding his
2  wheelchair. Within the first level response, the evaluator, Dr. Lee, indicates that defendant
3  Pomazal "conducted a thorough evaluation of your medical condition . . . ." (Compl., Doc. 1, at
4  98). However, even accepting that statement as a fact, at most it affirms that defendant Pomazal
5  evaluated plaintiff in regards to his disability and need for a wheelchair. It is also noted that
6  defendant Pomazal determined a referral to a pain specialist was not medically indicated. But
7  again, these statements do not necessarily undermine plaintiff's claim that he was arbitrarily
8  denied necessary pain medication shortly after signing a pain management agreement and
9  receiving a significant increase in the amount of pain medication he was receiving. And contrary
10 to the defendants' argument, plaintiff has specifically plead that each of these three defendants
11 participated in the denial of his pain medication. Accordingly, the undersigned cannot find that
12 plaintiff's complaint fails to state a claim for denial of pain medication against defendants
13 Burgett, Abdur-Rahman, and Pomazal.
14      Next, defendants contend plaintiff's due process claims against defendant Qualls
15 fails to state a claim. In his complaint, plaintiff claims defendant Qualls violated his right to due
16 process during a disciplinary hearing by falsifying statements and using fraudulent documents.
17 Defendants argue this fails to state a claim because plaintiff received all due process he was
18 entitled in the situation.
19      The Due Process Clause protects prisoners from being deprived of life, liberty, or
20 property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to
21 state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or
22 property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672
23 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the
24 deprivation of property where there is a legitimate claim of entitlement to the property. See Bd.
25 of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are
26 defined, by existing rules that stem from an independent source – such as state law – and which

secure certain benefits and support claims of entitlement to those benefits.  See id.

Liberty interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 483-84.  Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

1          Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56.

           Here, defendants are correct that plaintiff was provided all process that was due. According to Exhibit A attached to plaintiff's complaint, he timely received the written statement as to the charges, was provided an opportunity to present evidence, and his need for assistance was evaluated. In addition, there is some evidence to support the hearing officer's decision, namely the plaintiff's testimony at the hearing and the reporting employee's written disciplinary report. Plaintiff's contention that this evidence is fraudulent is insufficient under the circumstances. This is not a case wherein plaintiff is claiming an officer filed a fraudulent disciplinary action against him in retaliation for exercising his First Amendment rights such as was the case in Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997). If that was the case, plaintiff may be able to argue that the "some evidence" standard did not apply. See id. at 268-69; see also Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (explaining that the "some evidence" standard applies in a Fourteenth Amendment due process claim, but not in a First Amendment retaliation claim) . Here, where plaintiff is simply claiming violation of due process against the hearing officer based on the evidence used at the hearing, the "some evidence" standard does apply. And

according to the attachments to the complaint, there is clearly some evidence to support the hearing officer's finding. Accordingly, the defendants' motion to dismiss this claim should be granted.

Finally, defendants argue plaintiff's complaint fails to state a claim against defendant Amero for the threats he allegedly made against plaintiff. Plaintiff complaint is unclear as to whether he is making such a claim against defendant Amero. To the extent he does, the undersigned agrees with the defendants that it is insufficient.

As stated above, the treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998). In addition, the prisoner must show that the verbal comments were unusually gross, even for a

prison setting, and that he was in fact psychologically damaged as a result of the comments. See Keenan, 83 F.3d at 1092.

Here, plaintiff states that defendant Amero made threats against him, including that he was going to get another inmate to stab plaintiff. Such harassing threats do not constitute an Eighth Amendment violation. Plaintiff's one sentence allegation in the complaint about a threat defendant Amero made is simply insufficient. The motion to dismiss this claim should therefore be granted.

### C. QUALIFIED IMMUNITY

In addition to the arguments above, defendants further contend they are entitled to qualified immunity as to all claims. As the undersigned will recommend several of the claims in plaintiff's complaint be dismissed, the only claim subject to a qualified immunity analysis is plaintiff's deliberate indifference claim regarding his pain medication against defendants Clark, Burgett, Abdur-Rahman and Pomazal.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202

(citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right.  See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Resolving a motion to dismiss a claim on a qualified immunity basis is difficult.  So doing puts the court in a difficult position of trying "to decide far-reaching constitutional

questions on a nonexistent factual record[.]" Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004). A qualified immunity analysis on a motion to dismiss is based on the facts as alleged in the complaint, which the plaintiff may or may not be able to support. Thus, a finding that qualified immunity does not apply to support a motion to dismiss does not necessarily mean the defendants will not be entitled to qualified immunity once the facts have been developed.

Here, defendants make a fairly conclusory argument that they are entitled to qualified immunity because plaintiff fails to state a claim and a reasonable person in a similar situation would have acted the same, specifically denying plaintiff the medication. The undersigned finds the defendants argument unpersuasive. As discussed above, the undersigned finds that plaintiff's complaint is sufficient to state a claim for deliberate indifference to his medical condition in regards to his pain medication. It is well established that deliberate indifference to a prisoner's serious illness or injury gives rise to a claim under the Eighth Amendment. See Estelle, Estelle v. Gamble, 429 U.S. 97, 102, 105 (1976); see also Farmer v. Brennan, 511 U.S. 825, 832, 837 (1994). Finally, a reasonable medical provider would not, as alleged, deliberately withhold and/or terminate necessary pain medication without fully examining a prisoner and determining whether a substitute pain medication is indicated. Thus, the undersigned does not find the defendants entitled to qualified immunity at this time.

### III.    CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motions to dismiss (Docs. 39, 40) be granted in part and denied in part;

2. Plaintiff failed to exhaust his claims relating to his wheelchair, requested MRI, and pain specialist referral, and those claims should be dismissed;

3. Plaintiff's claims regarding his pain medication sufficiently state a claim for deliberate indifference to his medical condition, and the motion to dismiss those claims

should be denied;

      4.     Plaintiff's claim for violation of his due process rights relating to his prison disciplinary hearing is insufficient, and the motion to dismiss this claim should be granted;

      5.     Plaintiff's claim for violation of his Eighth Amendment rights relating to alleged threats against him is insufficient, and the motion to dismiss this claim should be granted;

      6.     Defendants are not entitled to qualified immunity at this stage of the proceedings;

      7.     As the only claims against defendants Vitvitski, Qualls, and Amero are insufficient or unexhausted, these defendants should be dismissed from this action;

      8.     This action should proceed as to plaintiff's Eighth Amendment claims relating to his pain medication against defendants Clark, Abdur-Rahman, Pomazal, and Burgett only; and

      9.     The remaining defendants should be directed to file an answer within 30 days of the adoption of these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 7, 2014

                    /s/ Craig M. Kellison
                      **CRAIG M. KELLISON**
                      UNITED STATES MAGISTRATE JUDGE